Nancy ABBE, Plaintiff,

v.

Stanley B. GOSS et al., Defendants.

No. 70 Civ. 4381.

United States District Court,
S. D. New York.

Oct. 8, 1975.

Garwin & Bronzaft, New York City, for plaintiff; by Bertram Bronzaft, New York City, of counsel.

Weinstein & Levinson, New York City, for individual defendants; by Frank Weinstein, New York City, of counsel.

Charles Trynin, New York City, for corporate defendant.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

The plaintiff, Nancy Abbe, purchased twenty-five shares of common stock of Tenna Corporation (hereinafter "Tenna") on August 31, 1970, at a cost of $163.38. On October 9, 1970, some five and a half weeks later, she filed this shareholder's derivative action under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), to recover profits made by the individual defendants as insiders on short swing transactions. Prior to the filing of this shareholder derivative suit no demand was made on Tenna's directors.

The five individual defendants admit their liability under Section 16(b) but claim that they have already disgorged the profits they made on the questioned transactions. Plaintiff acknowledges that payments have been made to the corporation but argues that her suit is still viable because (1) defendants' computations of their gains were incorrect and (2) interest should have been paid on the disgorged profits.

Motions for summary judgment were made on behalf of each of the individual defendants and I denied those motions in a memorandum endorsed on April 9, 1973. A motion for reargument was subsequently made and, after holding argument, I have concluded that the contested issues involve solely questions of law and can therefore be decided on this renewed motion for summary judgment. See Judge Motley's June 26, 1972 opinion in this case, pp. 2–3.

Before reaching the merits of the arguments concerning (1) the method of computing profits under Section 16(b) and (2) the imposition of interest, there is a threshold question of whether the complaint should be dismissed for plaintiff's failure to comply with the demand requirements of Rule 23.1 of the Federal Rules of Civil Procedure. That rule requires, in pertinent part, that in a shareholder derivative action "[t]he complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors . . . and the reasons for his failure to obtain the action or for not making the effort."

Plaintiff, Nancy Abbe, admits that no demand has ever been made on Tenna's directors but claims that any demand would have been futile since the individual defendants control Tenna. The complaint alleges that "Tenna's Board of Directors is dominated and controlled by defendant Ludwig, who together with his son, Harvey A. Ludwig, and daughter, defendant Mendes, own more than 44 per cent of the common stock of Tenna." Complaint ¶ 17.

The defendants alleged that a demand would not have been futile and point to the fact that prior to the institution of this suit Tenna was conducting negotiations with the Securities and Exchange Commission in an attempt to settle the insider trading problems that are the subject of this complaint. Defendants also state that the fact that three of the individual defendants made payments to Tenna on the very day this complaint was filed shows that a demand would not have been futile. Defendants' position is weakened by a document they supplied, i. e., the defendant Mendes' separation agreement which states that her "family owns the controlling interest in The Tenna Corporation."

The law is indeed unclear and imprecise in defining what constitutes sufficient "futility" to excuse a Rule 231 demand. Compare *Nussbacher v. Continental Illinois Nat'l Bank,* 518 F.2d 873 (7th Cir. 1975) with *In re Kauffman Mutual Fund Actions,* 479 F.2d 257 (1st Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). Professor Moore summarizes the law on this point: "There is no unanimity of opinion amongst the courts, and probably the most straightforward approach is to admit frankly that it lies with the sound discretion of the court to determine the necessity for a demand." 3B Moore's *Federal Practice,* 23.-1.19 at 254 (2d ed. 1974).

▉ Applying "sound discretion" to the facts of this case it would appear that the

individual defendants' control of Tenna was sufficient to excuse a Rule 23.1 demand. See *Cathedral Estates, Inc. v. Taft Realty Corp.,* 228 F.2d 85 (2d Cir. 1955); *Papilsky v. Berndt,* 59 F.R.D. 95 (S.D.N.Y.1973).

Having thus disposed of the threshold "demand" question, the next area of controversy involves the proper method for computing the Section 16(b) profits of the defendants Goss and Mendes. As to Goss, the applicable formula is set out in Rule 16b–6 as follows:

sale price

— lowest market price within 6 mos. of date of sale

§ 16(b) profit

There is no dispute as to either Goss' sale price ($178,081.12) or the lowest market price within six months of the date of his sale ($36,663.00). Inserting these figures into the formula, Goss' profit was

| $178,081.12 | 11/3/69 sales price |
| —36,663.00 | lowest market price within 6 mos. |
| $141,418.12 | § 16(b) profit |

██ This was, in fact, the exact amount Goss repaid to Tenna on October 9, 1970, the very day this complaint was filed and seventeen days prior to its service on Goss. While it thus seems clear that the defendants are entitled to summary judgment on this point, the plaintiff raises two problems. First, the plaintiff argues that Goss exercised his option on June 13, 1969 rather than on October 20, 1968, as Goss himself claims. While there is support in the record for plaintiff's argument and while the possibility of backdating corporate records may provide the basis of another lawsuit, as to this complaint it is immaterial whether Goss exercised his option on June 13, 1969 or October 20, 1968. If it was the former date, Goss has paid in full his Section 16(b) profit and if it was the latter date, the transaction was beyond the six month provision of Section 16. Plaintiff's second objection to the entry of summary judgment

in favor of Goss is that in computing Goss' Section 16(b), profit, I should not apply the formula set out in Rule 16b–6. Plaintiff argues that I should invoke some inherent equitable power to apply a new measure of damages. She suggests:

sale price

— *option price*

Section 16(b) profit

I find no reason why I should not apply the standard clearly set forth in Rule 16b–6 and plaintiff has offered neither case law nor statutory support for this argument. There being no merit in plaintiff's arguments, I find that Goss' Section 16(b) profits were correctly calculated.

In addition to disputing the Goss calculation, the plaintiff also contends that the defendant Mendes miscalculated her Section 16(b) profits. During the time period in question Violet Mendes was neither an officer nor director of Tenna but apparently was the owner of more than 10 per cent of Tenna's stock. Her father and co-defendant Sidney Ludwig was chairman of the board of Tenna.

On August 25, 1969, Violet Mendes sold 5,000 shares of Tenna stock. The 5,000 shares she sold were part of a large number of shares (93,592) she acquired from her husband, Morton R. Mendes, pursuant to a separation and property settlement agreement filed on April 29, 1969, in an Ohio court. Violet Mendes is liable for Section 16(b) profits only if the acquisition of these shares is considered a "purchase" under Section 16(b).

When Tenna initially requested Violet Mendes to pay Section 16(b) profits on this transaction, she refused and claimed that the shares acquired pursuant to the divorce action were not a "purchase". However, Mendes ultimately paid Tenna $15,603.16 for short swing profits because "of her close relationship with the company and in order to avoid litigation."

Plaintiff argues that Mendes was in fact liable for Section 16(b) profits on the divorce decree "purchase" and that the profit

was $22,441.62 or $6,838.46 greater than the amount she paid to Tenna. The difference in the two amounts results from the defendant's deducting legal costs in computing Mendes' short swing profits.

 I find it unnecessary to determine whether Mendes paid the correct amount in Section 16(b) profits because I hold that the shares acquired pursuant to the divorce decree do not constitute a "purchase" under Section 16(b). In determining whether a particular transaction is a "purchase" within the meaning of Section 16(b) the courts have applied an essentially pragmatic standard and have attempted to determine whether the questioned transaction was one which could possibly have lent itself to the insider speculation which Section 16(b) was passed to prevent. *Petteys v. Butler (Northwest Airlines, Inc.)*, 367 F.2d 528 (8th Cir. 1966); *Ferraiolo v. Newman*, 259 F.2d 342 (6th Cir. 1958), *cert. denied*, 359 U.S. 927, 79 S.Ct. 606, 3 L.Ed.2d 629 (1959). I do not find that a divorce decree is the type of transaction which lends itself to insider speculation nor do I believe it was the type of transaction Congress had in mind in passing Section 16(b). For this reason, Violet Mendes is entitled to summary judgment on the claim against her.

Plaintiff's final contention is that interest should have been paid on the profits disgorged by all of the individual defendants. Allowance of interest is not mandatory: "interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness." *Blau v. Lehman*, 368 U.S. 403, 414, 82 S.Ct. 451, 457, 7 L.Ed.2d 403, 411 (1962), quoting *Board of County Commissioners v. United States*, 308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313, 317 (1939). The fact that most of the Section 16(b) profits were paid to Tenna prior to the service of the complaint on the individual defendants mitigates against an imposition of interest. Considering all the facts of this unique case I reject plaintiff's claim that interest must be added to the payments already made.

Motion for summary judgment granted in all respects.

Settle order on notice.