**Robert SMITH, Plaintiff,**

v.

**Melvin J. GORDON, et al., Defendants.**

**Civ. A. No. 87–0371–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

Sept. 1, 1987.

Richard S. Glasser, Stephen Wainger, Glasser & Glasser, Norfolk, Va., Robert P. Sugarman, New York City, for Robert Smith.

Robert F. Brooks, Robert M. Rolfe, Hunton & Williams, Richmond, Va., for Daniel Ross & Charles Seibert.

R. Harvey Chappell, Jr., Michael L. Soffin, Paul W. Jacobs, II, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., Thomas H. Morsch, William F. Lloyd, Richard B. Kapnick, Sidley & Austin, Chicago, Ill., for Melvin Gordon, Ellen Gordon, William Touretz and Tootsie Roll Industries, Inc.

## MEMORANDUM AND ORDER

SPENCER, District Judge.

Plaintiff is a shareholder of defendant Tootsie Roll Industries, Inc. ("Tootsie Roll"). The other defendants are members of Tootsie Roll's Board of Directors ("the Board"). Plaintiff, by Verified Complaint, brings this shareholder derivative action in response to the defendants' plan to introduce a "Class B" category of stock. The matter is currently before the Court on defendants' motion to dismiss for plaintiff's failure to make a demand on the Board. For reasons stated below, the motion will be denied.

I.

The Board approved an amendment to Tootsie Roll's Articles of Incorporation which would authorize 10,000,000 shares of the Class B Common Stock. The amendment was described in a March 27, 1987 Proxy Statement, and in a letter sent to shareholders by defendants Melvin J. and Ellen R. Gordon. The shareholders approved the amendment on May 4, 1987. In response, plaintiff brought this action, alleging violations of the Securities Exchange Act of 1934, and breach of fiduciary duty.

Plaintiff admits that he made no demand on the Board to institute suit, but contends that such demand is excused because it would have been futile. In support of this assertion, plaintiff contends, under the heading "Demand Allegations," that (a) all Board members are defendants in this action; (b) the Board members "participated in, acquiesced in, approved and benefited from the wrongs alleged;" and (c) the Board is liable for the wrongs alleged. Complaint, at paragraph 14.

In other paragraphs of the Complaint, plaintiff details the alleged involvement and bias of the Board members. In paragraph 9, he contends that the Gordons dominate and control Tootsie Roll, owning 47.6% of the outstanding pre-amendment stock. In paragraph 13, plaintiff alleges that the other three individual defendants are beholden to the Gordons for their positions and income derived from Tootsie Roll, whether directly or indirectly (e.g., defendant Ross' law firm served as general counsel for Tootsie Roll for many years). Simply put, plaintiff contends that the Gordons, with the assistance of the other directors, set about to solidify their positions through the creation and manipulation of the Class B Common Stock.

II.

Defendants maintain that, under Fed.R. Civ.P. 23.1, this action must be dismissed for plaintiff's failure to make a demand on the Board to undertake this suit. Rule 23.1 reads:

In a derivative action brought by one or more shareholders or members to en-

force a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

Courts have been divided over whether state or federal law should be applied to the demand requirement of Rule 23.1. *See Matter of Consumers Power Company Derivative Litigation*, 111 F.R.D. 419, 422 (E.D.Mich.1986); *Zimmerman v. Bell*, 585 F.Supp. 512, 514 (D.Md.1984), *aff'd*, 800 F.2d 586 (4th Cir.1986). The Fourth Circuit has purported to apply federal law, *Meltzer v. Atlantic Research Corp.*, 330 F.2d 946, 948 (4th Cir.), *cert. denied sub nom. Scurlock v. Meltzer*, 379 U.S. 841, 85 S.Ct. 78, 13 L.Ed.2d 47 (1964); while Judge Williams of this Court has held that state law must be considered, *Reilly Mortgage Group, Inc. v. Mount Vernon Savings and Loan Association*, 568 F.Supp. 1067, 1075 (E.D. Va.1983).

Although the federal law—state law debate is an ongoing one, it is, in this Court's view (at least as far as Virginia law is concerned), a distinction without a difference. The Code of Virginia speaks to the demand requirement in shareholder derivative actions:

A complaint in a proceeding brought in the right of a corporation shall allege with particularity why demand was excused or that demand was made to obtain action by the board of directors and either that the demand was refused or ignored. If the corporation commences an investigation of the charges made in the demand or complaint, the court may stay any proceeding until the investigation is completed.

Va.Code § 13.1–672 B.

For all practical purposes, there is no difference between the demand requirements of federal and Virginia law. *Clark Enterprises, Inc. v. Holywell Corp.*, 559 F.Supp. 1307, 1311 n. 3 (E.D.Va.1983). Moreover, it is well-settled that the question whether a plaintiff has shown that the demand requirement is excused is committed to the sound discretion of the trial court. *Id.* at 1310.

However, in determining whether that burden has been met, i.e., whether demand would be futile, the law is far from well-settled. Commentators have concluded that the cases can be classified into majority and minority positions. *See* Block, Prussin, and Wachtel, *Dismissal of Derivative Actions Under the Business Judgment Rule:* Zapata *One Year Later*, 38 Bus. Law. 401, 410–12 (1983); Note, *Demand on Directors in a Shareholder Derivative Suit When the Board has Approved the Wrong*, 26 B.C.L.Rev. 441 (1985). Some courts have noted this supposed polarization of positions. *See, e.g., Reilly Mortgage Group, Inc.*, 568 F.Supp. at 1076–78.

The stalwart of the majority position has been the First Circuit. In short, that view holds that director approval of alleged misdeeds, without specific allegations of bias or self-dealing, is insufficient to render demand futile. *See Heit v. Baird*, 567 F.2d 1157, 1160–62 (1st Cir.1977); *In re Kauffman Mutual Fund Actions*, 479 F.2d 257, 262–66 (1st Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). Two other circuits have cited these cases with

approval. *Lewis v. Graves,* 701 F.2d 245, 248–49 (2d Cir.1983); *Greenspun v. Del E. Webb Corp.,* 634 F.2d 1204, 1209–10 (9th Cir.1980).

The minority view, on the other hand, holds that a plaintiff's allegations of board approval of the alleged wrong is sufficient to excuse demand. *See Liboff v. Wolfson,* 437 F.2d 121, 122 (5th Cir.1971). Naming the directors as defendants is, under this view, another consideration going to futility. *Clark v. Lomas & Nettleton Financial Corp.,* 625 F.2d 49, 53 (5th Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1981). The Tenth Circuit has also taken a relatively relaxed approach to the demand requirement. *de-Haas v. Empire Petroleum Co.,* 435 F.2d 1223, 1228 (10th Cir.1970), *aff'g* 286 F.Supp. 809, 813–15 (D.Colo.1968) (the three "outside" directors were not "active and agressive" so as to overcome the desires of the two "inside" directors and prosecute a lawsuit).

Although the majority view—minority view debate continues to rage, it is perhaps more prudent and appropriate to place the various approaches on a continuum, with the First Circuit view representing one extreme, and the Fifth Circuit approach the other. To be sure, the question of futility is, by its very nature, fact-oriented, and some courts have demonstrated a reluctance to fully embrace an extremist approach. For example, in *Matter of Consumers Power Company Derivative Litigation,* 111 F.R.D. at 424, the district court accepted the First Circuit approach, but not without commenting that the "approach is not free from difficulty" in that a heightened burden on plaintiffs may tend to relieve non-active directors from liability for "rubber-stamping" wrongdoing. Furthermore, the Third Circuit has categorically stated that the First Circuit view may go too far: "To the extent that *Heit* requires that it be alleged that a majority of directors be involved in a facially improper transaction before demand will be excused, we decline to follow it." *Lewis v. Curtis,* 671 F.2d 779, 786 (3d Cir.1982).

In the instant case, the parties have presented this Court with the opportunity to adopt one of the extremist views. The Court declines the invitation. This Court need not choose between the majority and minority positions, or determine which point on the spectrum is most comfortable. Instead, there is authority from the Fourth Circuit that is, albeit somewhat aged, but still on point. *Meltzer v. Atlantic Research Corp.,* 330 F.2d 946, is closely analogous to the instant case. There, the court found that allegations of misfeasance by two directors, coupled with acquiescence by the other three, were sufficient to excuse demand. *Id.* at 949.

Here, the Gordons face allegations of affirmative wrongdoing, and the remaining directors are accused of acquiescing in the Gordons' scheme. Defendants attempt to distinguish *Meltzer* by arguing that there "a majority of the Board of Directors acquiesced and approved of *criminal* conduct and the flagrant looting of coprorate assets by a controlling shareholder." Reply Memorandum, at 9 (emphasis in original). This misses the point, however. In this Court's view, the thrust of *Meltzer* concerns not the type of alleged wrongdoing, but the actions of the directors in formulating and perpetuating the wrongdoing.

While the *Meltzer* court purported to apply federal law, it did note that "Virginia decisional law appears to be in accord." *Meltzer,* 330 F.2d at 949. *See also Reilly Mortgage Group, Inc.,* 568 F.Supp. at 1077. Moreover, the Fourth Circuit continues to cite *Meltzer* with approval. *Womble v. Dixon,* 752 F.2d 80, 82 (4th Cir.1984). Until instructed to cease doing so by an appropriate authority, this Court must continue to apply *Meltzer,* and *Meltzer* tells us, at the very least, that when faced with the facts and allegations contained in the instant case, demand is excused on the ground of futility.

### III.

For reasons stated above, defendants' motion to dismiss is DENIED.

And it is so ORDERED.